[Cite as *Cleveland v. WP Brooklyn SPE, L.L.C.*, 2026-Ohio-2609.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                      :

    Plaintiff-Appellee,          :

                                               No. 115505

    v.                           :

WP BROOKLYN SPE LLC,                    :

    Defendants-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, MODIFIED IN PART,
                  VACATED IN PART, AND REMANDED

**RELEASED AND JOURNALIZED:** July 9, 2026

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2024-CRB-005279

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, and William H.
Armstrong, Jr., Assistant Director of Law, *for appellee.*

Powers Friedman Linn, PLL, Robert G. Friedman,
Thomas P. Owen, and Kyle L. Ripma, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant WP Brooklyn SPE, LLC ("Appellant") appeals the Cleveland Municipal Court, Housing Division's (the "housing court") sentence imposed after Appellant's no contest pleas. For the reasons that follow, we affirm in

part; vacate the community-control sanctions to close open violation notices, require general maintenance and the no-sale provisions for properties not before the court; vacate the original fine; impose a fine of $5,000; and remand for correction of the sentencing entry.

## I.    Factual and Procedural History

{¶ 2} In July 2024, the City of Cleveland ("Appellee" or the "city") filed a complaint in the housing court alleging that Appellant had committed 20 violations of Cleveland Cod.Ord. 3103.25(e), misdemeanors of the first degree. The complaint alleged that Appellee issued a violation notice (the "Notice") to Appellant as the owner of "4231 West 20th Street, AKA 4211-4213 West 20th Street." The "AKA" referenced the fact that the Cuyahoga County Auditor tracked the entire parcel as 4211-4213 West 20th Street. However, there were four buildings on the parcel, each with different addresses: 4211-4213 West 20th, 4231-4233 West 20th, 4241-4243 West 20th, and 4261-4263 West 20th (collectively the "West 20th Street property"). The Notice was issued on February 3, 2023, listed 23 code violations, and required Appellant to correct the violations by March 5, 2023. The complaint alleged that Appellant failed to comply with the Notice between the dates of March 31, 2024 and April 19, 2024, inclusive. Cleveland Cod.Ord. 3103.25(e) provides that each day a violation remains on a property constitutes a separate offense.

{¶ 3} In July 2025, Appellant and Appellee entered into a plea agreement. In exchange for dismissal of the remaining charges, Appellant pleaded no contest to ten violations of CCO 3103.25(e). In addition to these charges, Appellant also

pleaded no contest in Cleveland M.C. Nos 2024-CRB-4613, 2024-CRB 4589, and 2024-CRB-4580. Each case charged minor-misdemeanor violations of the city's lead-safe-certification ordinance. Case No. 2024-CRB-4613 pertained to the West 20th Street property. Case No. 2024-CRB-4580 pertained to a property located at 2235 Forestdale (the "Forestdale property"), and Case No. 2024-CRB-4589 pertained to 3103 Denison (the "Denison property"), other properties owned by Appellant. Appellant did not appeal the minor-misdemeanor convictions.

{¶ 4} In August 2025, the housing court held a sentencing hearing. The court heard testimony from Isaac Jacobs ("Jacobs"), a housing court specialist employed by the court.[1] He noted that none of the properties were in foreclosure and that Appellant was registered with the state but did not have a local agent registered with the city. Jacobs conducted site visits at all three of Appellant's properties and provided a detailed report of the then-current conditions.

**A. The West 20th Street Property**

{¶ 5} With respect to the cited property, Jacobs testified that there were three active violation notices. One violation notice was issued to 4211-4213 West 20th for failure to obtain a lead-safe certificate. Appellant had not yet obtained a lead-safe certificate for the address. A second violation notice was issued to 4241 West 20th Street, and a third was issued for 4231-4233 West 20th Street,

---

[1] Jacob's presented a slide show with pictures of the properties during his testimony. The slide show is not part of the record on appeal.

which was the subject of Appellee's complaint. Jacobs did not detail the specific violations in the notices.

{¶ 6} Jacobs then described his personal observations of the buildings. At 4211-4213 West 20th, Jacobs observed significant damage to the screens on most of the balconies. There was "some evidence" of boarding. He noted that the building was almost entirely vacant, though some units were occupied. Along the rear of the building, he observed a fallen tree next to the foundation.

{¶ 7} At 4231-4233 West 20th, Jacobs observed dislodged and missing screen doors, air conditioners with missing covers, and a broken window at the corner of the property on the top.

{¶ 8} At 4241-4243 West 20th, Jacobs observed a broken window with a board on the inside of a second-floor unit, more dislodged and missing screens, and missing screen doors on the second floor. The housing court pointed out a broken window in a picture as Jacobs was testifying. Jacobs further noted a mattress left next to the building's dumpster and another downed tree between two of the buildings. There was a significant amount of junk and debris thrown beneath the tree.

{¶ 9} Finally, at 4261-4263 West 20th, Jacobs testified that there was caution tape on one of the balconies. Appellant informed the court that a repair was scheduled and that might explain the caution tape. Jacobs also noted an air conditioner missing its cover, a boarded patio door, and a dislodged screen above it. Additionally, he observed that there was "pretty significant" standing water at the

rear of the building; however, he did not notice any junk or debris at the rear of the building.

{¶ 10} Jacobs concluded his testimony by noting that he had reached out to the Ward 12 councilperson's office to obtain community-impact statements. He had not received a response as of the date of sentencing.

### B. Statements of the Parties

{¶ 11} The court then gave Appellant an opportunity to address the court. Appellant's counsel informed the court that it had hired a property-management company, run by Kenny Wolfe ("Wolfe"). Wolfe was, at one time, a member of Appellant. The other members learned that the property-management company had "bled the properties dry" of capital. They removed Wolfe from Appellant and have since been working very hard to correct the problems created by him and the property-management company.

{¶ 12} Appellant's counsel also noted that although his client had not obtained a lead-safe certificate for the West 20th Street property, it had started the process and obtained a lead-risk assessment. Finally, counsel averred that his client was not acting in bad faith, was "engaged," and was in the process of remedying the violations. A representative of Appellant agreed with counsel's representations.

{¶ 13} Appellee then spoke, noting that Appellant's properties should either be placed on the vacant-property registry or have valid rental registration. Appellee also suggested that the housing court place Appellant on a tax payment plan for the Denison property. Although the taxes for the current year were paid, Appellee noted

that taxes remained delinquent for the 2023 tax year. Appellant did not respond or object to any of Appellee's requests.

### C. Imposition of Sentence

{¶ 14} The housing court issued its sentence, first imposing fines on the three minor-misdemeanor cases. Then the court addressed the higher-level offenses. The court issued a fine of $50,000, which the court stayed as long as Appellant obeyed the court's orders. The housing court then imposed community-control sanctions for a period of three years and noted that the community control encompassed all properties that Appellant owned. The housing court imposed the following conditions:

(1) any property that is not rental ready must be registered with the vacant building registry;

(2) obtain lead safe certificates for all properties;

(3) obtain a "certified proven rental occupancy" for the rental properties, which requires that they close out the "three" active violation notices;

(4) close out all the violation notices and permits at the Denison and Forestdale properties;

(5) continue to pay taxes or establish a tax payment plan with the county;

(6) finish boarding the Denison property;

(7) all junk and debris must be removed from all properties;

(8) remove boards, replace screens, patio doors, and windows at the West 20th property because it is partially occupied;

(9) replace missing screen covers on all air conditioning units;

(10) place dumpsters according to City code;

(11) register a local agent with the city;

(12) order the new property manager, Athene, LLC to allow an inspection of the exterior of all buildings at the West 20th Street property;

(13) complete and submit a tier III maintenance and repair plan by the first of each month; Jacobs to send them a document with the requirements;

(14) a "verbal order" to not give, sell, or transfer any of the properties without the housing court's permission; [2]

(15) attend the landlord clinic;

(16) maintain the grass and shrubbery; and

(17) remove the invasive vines from the power lines at the Forestdale property.

**{¶ 15}** Appellant did not object during or after the imposition of sentence.

**{¶ 16}** In August 2025, the housing court issued its sentencing entry. The entry imposed a $50,000 fine on Count 1, which was stayed pending Appellant's compliance with community-control sanctions. The entry listed the community-control sanctions as noted with a few additions: Appellant was required to obtain lead-safe certifications or apply for lead-safe exemptions and pay all outstanding taxes or apply for a tax payment plan generally, rather than just for the Denison property; it also noted that Appellant was advised that the housing court reserved the right to amend the community-control sanctions after the court-ordered exterior inspection of the W. 20th Street property. The order also required Appellant to

---

[2] The court emphasized that the order to not give, sell, or transfer the properties was verbal and not written, and then reminded Appellant that the fine was stayed only if it complied with all the housing court's orders.

abide by the code, not re-offend, and keep all its properties within Cleveland and Bratenahl in compliance with the code. The entry also included a chart listing each count and the imposed fine and penalty. However, for all ten counts the journal entry listed "N/A" under the community-control sanction column.

{¶ 17} Appellant appeals and assigns the following assignments of error for our review.

### Assignment of Error No. 1

The [housing court] erred by imposing community-control sanctions upon a limited liability company.

### Assignment of Error No. 2

The [housing court's] conditions of community control are unwarranted by law, do not relate to rehabilitation or the underlying offense, are not narrowly tailored and, thus, are overbroad, and deprive Appellant of due process.

### Assignment of Error No. 3

The [housing court] erred by imposing community-control conditions on properties with minor misdemeanors.

### Assignment of Error No. 4

The [housing court] erred by imposing community-control conditions requiring appellant to comply with Chapter 365 of the Cleveland Codified Ordinances, which does not apply to limited liability companies.

### Assignment of Error No. 5

The [housing court] erred in imposing a $50,000 fine upon Appellant on one first degree misdemeanor.

## II. Law and Analysis

{¶ 18} For ease of analysis, we will address the assignments of error out of order and/or in combination.

### A. Fines

{¶ 19} In the fifth assignment of error, Appellant argues that the housing court erred when it imposed a $50,000 fine on one first-degree misdemeanor. We agree. Fines for an organizational defendant are defined in R.C. 2929.31, which allows a court to impose a maximum fine of $5,000 for a misdemeanor of the first degree. Rather than impose $5,000 on each of Appellant's 10 counts, the housing court imposed $50,000 on Count 1 and did not impose a fine on the remaining counts. This fine exceeded the statutory maximum for a single misdemeanor of the first-degree misdemeanor count. *Cleveland v. Hero Homes JV2 LLC,* 2025-Ohio-4585, ¶ 25 (8th Dist.); *accord Cleveland v. Shaker Hts. Apts. Owner LLC*, 2026-Ohio-449, ¶ 36 (8th Dist.). Therefore, we sustain the fifth assignment of error, vacate the fine and impose a fine of $5,000 on Count 1, which is to be stayed per the housing court's original order.

### B. Community-Control Sanctions

{¶ 20} In the first and third assignments of error, Appellant challenges the housing court's authority to issue community-control sanctions to a limited liability company, in general, and to impose them for minor-misdemeanor offenses.

{¶ 21} In the first assignment of error, Appellant asserts that R.C. 2929.31 establishes sentencing guidelines for organizations and that statute prescribes the

only penalties allowed under the law. Specifically, Appellant argues that the housing court was only permitted to fine the company and could not impose community-control sanctions. At oral argument, Appellant conceded that this assignment of error was overruled based on this court's ruling in *Shaker Hts. Apts. Owner LLC*, which found that community-control sanctions apply to limited liability companies. Accordingly, based on the authority of that decision and Appellant's concession, we overrule the first assignment of error.

{¶ 22} In the third assignment of error, Appellant claims that the housing court included community-control provisions for its other properties in its sentencing entry for this case, thus imposing community-control sanctions on minor-misdemeanor offenses. Preliminarily, we note that Appellant did not appeal the housing court's minor-misdemeanor sentences. Accordingly, we are not able to review the record for those cases to determine what sentence was imposed. However, we do not find that the housing court's sentencing entry for the first-degree misdemeanor charges included community control on the minor misdemeanors.

{¶ 23} At the sentencing hearing, the housing court first noted that its jurisdiction allowed it to impose community-control sanctions for all of Appellant's properties. The housing court's sentencing entry references the three minor-misdemeanor cases, noting that the court levied fines and court costs. However, the entry does not include the plea or the finding of guilt for the minor-misdemeanor charges, and therefore, the entry does not function as a conviction for those charges.

> Crim.R. 32(C) specifies what a judgment entry of conviction must contain: "A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence." In *State v. Baker*, [119 Ohio St.3d 197], we confirmed that a judgment entry of conviction must contain the Crim.R. 32(C) elements to be final and subject to appeal.

*State v. Lester*, 2011-Ohio-5204, ¶ 8.

{¶ 24} The housing court's community-control sanctions included requirements that Appellant maintain all its properties within the city, but it did not impose a sentence on those minor-misdemeanor citations. Accordingly, we overrule the third assignment of error to the extent it claims an improper sentence was imposed on minor-misdemeanor convictions. Nevertheless, we recognize that Appellant's assigned error raises the question of whether the housing court's sanctions were overbroad where they reach properties not directly cited in the underlying matter. We will address that concern in the next section.

### C. Community-Control Conditions

{¶ 25} In the second and fourth assignments of error, and to a limited degree, the third assignment of error, Appellant challenges the housing court's community-control conditions.

{¶ 26} Trial courts have broad discretion in imposing misdemeanor sentences, and those decisions are reviewed for an abuse of discretion. *State v. Moore*, 2023-Ohio-1819, ¶ 8 (8th Dist.), citing *State v. Cooper*, 2016-Ohio-8048, ¶ 31 (8th Dist.), citing *State v. Talty*, 2004-Ohio-4888, ¶ 10. Moreover, a trial court does not abuse its discretion when it imposes one of the enumerated sanctions in R.C. 2929.27. *State v. Ballish*, 2026-Ohio-503, ¶ 28 (finding that "the [*State v.*

*Jones*, 49 Ohio St.3d 51 (1990)] test . . . is not applicable to a sentencing court's imposition of those community-control sanctions that the legislature has expressly authorized under R.C. 2929.27."). This discretion is not without limits. *Talty* at ¶ 11, citing *Jones* at 52. A community-control sanction should "reasonably relate to the offense at issue, further the twin goals of rehabilitation and justice, and not cause a greater deprivation of liberty than is necessary to achieve those penological goals." *State v. Chapman*, 2020-Ohio-6730, ¶ 17, citing *Jones* at 53.

{¶ 27} Furthermore, "'a trial court has the discretion to "impose additional conditions aimed at preserving the interest of justice, protection of the community, and the rehabilitation of the offender."'" *Cleveland v. Sopjack,* 2024-Ohio-6018, ¶ 32 (8th Dist.), quoting *Pentagon Realty*, 2019-Ohio-3775, ¶ 11 (8th Dist.), quoting *N. Olmsted v. Rock*, 2018-Ohio-1084, ¶ 11 (8th Dist.), citing *Lakewood v. Krebs*, 2008-Ohio-7083 (M.C.). "[C]ourts should take particular care to ensure that the sanctions are appropriately crafted to meet a proper rehabilitative purpose." *Chapman* at ¶ 19. These conditions "'must not be overbroad and must reasonably relate to the goals of community control." *Sopjack* at ¶ 32.

{¶ 28} To determine whether a community-control sanction meets the goals of "rehabilitation, administering justice, and ensuring good behavior," the housing court must consider

> "'whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct, which is criminal or reasonably related to future criminality and serves the statutory ends of probation.'"

*Moore* at ¶ 10, quoting *Talty* at ¶ 12, quoting *Jones* at 53.

{¶ 29} "'All three prongs of the *Jones* test must be satisfied for the reviewing court to find that the trial court did not abuse its discretion.'" *Sopjack* at ¶ 33, quoting *Pentagon Realty* at ¶ 13, citing *Solon v. Broderick*, 2018-Ohio-4900, ¶ 8 (8th Dist.).

### 1. Extension of Community-Control Sanctions to Appellant's Other Properties.

{¶ 30} With that context in mind, we first address Appellant's contention in the third assignment of error that the housing court could not include requirements for the Denison and Forestdale properties.

{¶ 31} Certain of the housing court's orders for the Forestdale and Denison properties are discussed in a later section because they fall into the category of what Appellant calls "aesthetic" concerns. Here we address the housing court's specific orders that require Appellant to

(1) refrain from selling, gifting, or transferring the properties it owns within the City of Cleveland while on community control without approval of the housing court. Housing Court Judgment Entry ("HC JE") item 4;

(2) obtain rental registration certificates, certificates approving rental occupancy, or apply for the city's vacant home registry to obtain exemptions and submit copies to the housing court to prove compliance with the order. "HC JE" item 6;

(3) comply with the city' lead safe ordinance and obtain a lead safe certificate or apply for lead safe exemptions and submit proof of compliance to the housing court. HC JE item 7;

(4) register any vacant properties with the city's building and housing department. HC JE item 8;

(5) pay all outstanding property taxes or arrange a payment plan with the county. HC JE item 9; and

(6) submit a maintenance and repair plan to the housing court through Jacobs on the first of each month delineating the dates of the property manager's inspections of the properties to prevent code violations, notice of scheduled repairs, renovations, sale, attaching copies of permits when repairs, and copies of receipts for payments for any repairs. HC JE item 23.

{¶ 32} This court has noted that the housing court has subject-matter jurisdiction over housing offenses, discretion to impose community-control sanctions, and "territorial jurisdiction over any property in Cleveland once the city of Cleveland files a housing code case." *Garg v. Scott*, 2024-Ohio-1595, ¶ 26 (8th Dist.). In addition, we have found that "community-control sanctions are not meant to be employed to circumvent the policies and procedures in place for addressing building and housing violations." *Sopjack*, 2025-Ohio-4952, at ¶ 22 (8th Dist.). In *Sopjack*, the housing court addressed a community-control-sanction violation by ordering an exterior inspection of the defendant's residence, a property that was not the subject of the original charge. We found that while the housing court could certainly order an exterior inspection of the property, its order requiring the inspection as a condition of community control was overbroad. Further, we noted that if the city had observed violations on the property it could file the appropriate violation notices and/or citations to bring those properties before the court. *Id.*

{¶ 33} The Denison and Forestdale properties were not the subject of the complaint before the court. These sanctions were designed to address a bigger issue, ensuring that Appellant, and owners like it, maintained their properties regardless

of whether the city had filed a complaint before the court. Therefore, we find that the housing court's sanctions listed above were not reasonably related to rehabilitating the offender for its conduct at the West 20th property, did not have some relationship to the crimes alleged at the West 20th property, and did not reasonably relate to future criminality or serve the statutory ends of probation.

{¶ 34} We recognize that the housing court has attempted to address the problems of organizational ownership in the city for close to 20 years, if not longer. *See Cleveland v. Destiny Ventures, L.L.C.*, 2010-Ohio-2320; *Cleveland v. Wash. Mut. Bank*, 2010-Ohio-2219. While some owners take their responsibilities seriously, others do not, and the court has tried different measures to attempt to ensure that the city's housing is properly managed. Notably, those measures begin when the city files a criminal action before the court.

{¶ 35} Therefore, we sustain the third assignment of error as to the above listed sanctions and vacate them as to the Denison and Forestdale properties. Next, we address Appellant's remaining challenges to the housing court's sanctions in the second and fourth assignments of error.

## 2. Breadth of the Housing Court's Sanctions

{¶ 36} In the second assignment of error, Appellant argues that the housing court's community-control sanctions were overbroad and did not satisfy the purposes and principals of misdemeanor sentencing. Appellant challenges most of the imposed sanctions, but specifically addresses three: the "no-sale provision"; provisions requiring Appellant to close out uncharged violation notices and building

permits; and conditions "related to the subjective aesthetic concerns of the [housing court], as well as building upkeep and facilities management."

### a. The No-Sale Provision

{¶ 37} Appellant claims that the no-sale provision does not satisfy the *Jones* test and thus must be vacated. To reiterate, the *Jones* test requires evidence that the community-control condition is (1) reasonably related to the offender's rehabilitation, (2) has some relationship to the crime for which the offender was convicted, and (3) relates to the criminal conduct or is reasonably related to future criminality and serves the statutory ends of community control. Additionally, Appellant argues that the housing court was required to explain how the no-sale provision related to the purposes and principals of misdemeanor sentencing. Given the facts of this case, we find Appellant's arguments lack merit.

{¶ 38} At the time of sentencing, Jacobs listed multiple code violations at the West 20th Street property. While Appellant was in the process of correcting the violations, it had not finished at the time of sentencing. Requiring Appellant to seek the court's permission before selling the property reasonably related to rehabilitation in that it prevents Appellant from selling the properties "as is" rather than correcting the issues. Next, Appellant admitted at sentencing that the properties were in decent condition when purchased and while under its ownership, the properties deteriorated. We recognize that Appellant alleges they were defrauded by a former member and his property management company who would overcharge for maintenance repairs and then fail to complete them. Regardless,

Appellant bears the responsibility for allowing the properties to be mismanaged for several years. The no-sale provision prevents Appellant from selling the properties before addressing the violations that occurred under its management and is therefore reasonably related to the crimes for which Appellant was convicted. Next, the no-sale provision prevents future criminality, because to find otherwise would allow Appellant to sell the property in its current state to a new owner who could become a new defendant responsible for the Appellant's code violations. *Contra Cleveland v. City Redevelopment LLC*, 2024-Ohio-5213 (8th Dist.) (finding that the trial court abused its discretion in imposing a no-sale provision where the defendant had corrected the code violations at the time of sentencing; the no-sale provision was not reasonably related to the goals of community control where the cited property was in compliance with the code, delays in repair were attributable to the requirements of the city's landmarks commission and the defendant's remaining properties had not been cited by the city, additionally, these same factors established that the provision was not reasonably related to future criminality).

{¶ 39} Finally, Appellant, without citation to authority, argues the housing court should have explained its reasoning for imposing this sanction. However, neither R.C. 2929.21, 2929.22, nor 2929.25, which cover the purposes of misdemeanor sentencing, considerations during sentencing, and community-control sanctions respectively, require a sentencing court to explain its reasoning on the record. Furthermore,

[g]enerally, a trial court's failure to consider the factors [in R.C. 2929.21 and 2929.22] is an abuse of discretion. The trial court is not required to make factual findings on the record related to these factors. Absent a showing to the contrary by the defendant, when a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the factors required by R.C. 2929.22.

(Cleaned up.) *Cleveland v. Smerglia*, 2020-Ohio-3181, ¶ 31 (8th Dist.).

{¶ 40} Accordingly, we find that the trial court did not abuse its discretion by imposing the no-sale provision with respect to the West 20th Street property.

## b. Provision to Close Open Violation Notices and Permits

{¶ 41} Appellant also challenges the housing court's sanctions to the extent it requires it to close "open" violation notices and permits. However, Appellee claims that the housing court's order was merely a requirement that Appellant abide by the law. We disagree. Jacobs, an employee of the housing court, was the only witness to testify about the open-violation notices. Appellant did not present any witnesses.

{¶ 42} Cleveland Cod.Ord. 3103.09(e) governs violation notices. The ordinance requires Appellee to serve the notice upon the property owner and provides a right of the owner to appeal the notice to the Board of Building Standards. If an appeal is not filed and served upon the Director of Building and Housing, the violation notice becomes a final order. Cleveland Cod.Ord. 3103.09(e)(3,) and 3103.09(g). Additionally, the Director of Building and Housing may institute appropriate legal action in court if a property owner fails to comply with a violation notice. Cleveland Cod.Ord. 3103.09(h).

{¶ 43} In the instant case, the record only establishes that the violation notices were "open." There was no testimony regarding whether Appellant had been properly served with the violation notices; Appellant had exercised its right to appeal; the violation notices were designated as final orders; or any case(s) had been filed by Appellee on behalf of the Director of Building and Housing. Furthermore, there was no testimony establishing whether or to what extent Appellant had addressed the violations in the open notices.

{¶ 44} This court has raised concerns about housing court community-control sanctions that require the offender to close violation notices.

> It is my belief that the [housing court's] local rule and the restrictions imposed against [the appellant's] other properties are not rehabilitative and serve to preemptively circumvent the procedures and policies in place in the building and housing department for ensuring compliance with the applicable statutes and ordinances. If another property owned by [appellant] was in violation of the local building or housing code, the city was entitled to issue a citation, and if necessary, initiate criminal proceedings after affording [the appellant] due process. Instead, the court held a $50,000 sanction over [the appellant's] head to monitor properties that were not formally cited or directly related to the failure-to-comply convictions.

*Cleveland v. Southwest Invests., LLC*, 2024-Ohio-1271, ¶ 45 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only).

> [C]oncerns can be raised that even within a single property identified in the charging instrument, the community-control sanction should be limited to the violation at hand and is not a green light to address uncharged violations where no due process has been afforded the landowner. This practice raises concerns about the separation of powers where the judicial branch assumes the role of the executive in uncovering new violations through the guise of community-control sanctions and then compelling remediation. Uncovering violations is for the housing inspectors at City Hall, not the judiciary. *State v.*

*Hacker*, 2023-Ohio-2535, ¶ 14, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 56 ("The [separation-of-powers] doctrine 'requires that each branch of a government be permitted to exercise its constitutional duties without interference from the other two branches of government.'").

*Cleveland v. Johnson*, 2025-Ohio 1731, ¶ 29 (8th Dist.) (S.C. Gallagher, J., concurring).

{¶ 45} These decisions are instructive. The housing court's own investigation into open violations fails to provide Appellant its right to due process. Further, the violation notices are not proper considerations for a housing court merely because they are "open." The record here fails to support a finding that all administrative procedures were completed from service to administrative appeal to the establishment of a final order as provided in the city code. In fact, the record firmly established that two violation notices were "open" in Appellee's records despite Appellant bringing the properties into compliance with city code and that seven additional violation notices were blank.

{¶ 46} Therefore, we find where the record only reflects that a violation notice is "open," a community-control sanction requiring Appellant to close all open-violation notices is unsupported by the record and thereby inappropriate. Accordingly, we vacate the housing court's community-control sanction requiring Appellant to close all violation notices apart from the Notice that was the subject of this case.

### c. "Aesthetic" Requirements

{¶ 47} Finally, Appellant claims that the housing court abused its discretion when it required it to keep its properties free of all junk, debris, and dumping; cut the grass and keep it free of overgrowth of shrubbery; and remove "evasive" vines from the Forestdale property.[3] The city code requires that property owners address these issues. *See* Cleveland Cod.Ord. 203.07 (requiring property owners to "maintain [their] property free from any accumulation of garbage, rubbish, refuse or other waste which is not confined in approved receptacles for collection or so as to prevent rodent infestation"); 209.01 (establishing that certain conditions provide breeding grounds for pests or are otherwise conducive of human health problems and are nuisances, which are to be removed from any property where found, including grass over eight inches in height and noxious weeds), and 203.11 (stating any property is a nuisance when it is allowed to remain in violation of "any building, housing, zoning, fire, safety, air pollution, health or sanitation ordinance or provision of the Codified Ordinances of Cleveland, Ohio, 1976, the Ohio Administrative Code and/or the Ohio Revised Code"). Accepting Appellant's argument would negate the authority of the housing court to require offenders to comply with the law where it is documented that the conditions of an offender's

---

[3] Appellant argues that it does not understand what "evasive" vines means. The housing court's journal entry uses the word "evasive" which appears to be a typographical error, since the housing court used both the words "invasive" and "evasive" to describe the vines at the Forestdale property during sentencing. Nevertheless, Appellant did not object to the sanction at sentencing nor ask for clarification.

properties are in violation of the code and could potentially impact the quality of life for community members.

{¶ 48} Accordingly, the housing court did not abuse its discretion by requiring Appellant to abide by the code.

### d. The Remaining Sanctions

{¶ 49} We refuse to consider Appellant's argument that "the rest of" the housing court's sanctions were overbroad. It is Appellant's responsibility to support its assignments of error with citations to the record and authority, and to raise the issues in its brief, not the responsibility of the appellate court. *Cleveland Hts. v. Watts*, 2026-Ohio-126, ¶ 7 (8th Dist.).

{¶ 50} Accordingly, we affirm the housing court's community-control sanctions regarding the no-sale provision of the West 20th Street property and observed property conditions at all Appellant's properties; vacate the requirement that Appellant close open-violation notices and the community-control sanctions under HC JE line items 4, 6, 7, 8, 9 and 23 for the Denison and Forestdale properties.

### 3. Application of Cleveland Cod.Ord. Chapter 365

{¶ 51} Next, in the fourth assignment of error, Appellant contends that Cleveland Cod.Ord. Chapter 365 does not apply to limited liability companies. Specifically, Appellant alleges that the requirement that it obtain rental registration, lead-safe certification, and a certificate approval for rental occupancy do not apply because the chapter's definition of "owner" does not include a limited liability company. Appellee disagrees and points to case law establishing that a limited

liability company is a hybrid form of business because it is neither a corporation nor a partnership but includes aspects of both and thus the city's ordinances should apply to Appellant.

{¶ 52} Appellant did not challenge the applicability of Cleveland Cod.Ord. Chapter 365 before the housing court. In fact, at the time of sentencing, Appellant acted like the ordinance did apply by representing that it had obtained lead-safe certifications for two of its properties. It is well settled that a party cannot raise a new argument and/or legal issue for the first time on appeal. *State v. Hess*, 2021-Ohio-579, ¶ 5 (8th Dist.). "[F]ailure to raise an issue before the trial court waives that issue for appellate purposes." *Id.*, citing *Miller v. Cardinal Care Mgmt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.)., citing *Cleveland Town Ctr., LLC v. Fin. Exchange Co. of Ohio, Inc.,* 2017-Ohio-384 (8th Dist.).

{¶ 53} Accordingly, the fourth assignment of error is overruled.

### D. Conflicting Statements in the Journal Entry

{¶ 54} Lastly, we examine conflicting statements in the housing court's journal entry, which make the order unclear. Courts of appeals have a duty to examine deficiencies in jurisdiction. *Cleveland v. Damato*, 2026-Ohio-356, ¶ 11 (8th Dist.), citing *Treasurer Cuyahoga Cty. v. Holloway*, 2017-Ohio-8065, ¶ 4 (8th Dist.). We have jurisdiction to review final orders or judgments of lower courts within this district. *Id.* citing Ohio Const., Art. IV, §3(B)(2), R.C. 2501.02. In the absence of a final order, we are without jurisdiction to review the case and must dismiss it. *Cooney v. Radostitz,* 2021-Ohio-2521, ¶ 12 (8th Dist.).

{¶ 55} At sentencing, the housing court ordered:

The court's community-control jurisdiction encompasses all properties owned by WP Brooklyn SPE, LLC, placing them on active community control for three years for the date of – it'll be set to expire August 4th of 2028.

{¶ 56} However, the housing court's sentencing entry lists multiple community-control sanctions but the court marked "N/A" under the column for community-control sanctions in the grid delineating the sentence for each count.

{¶ 57} A court speaks through its journal entry not by oral pronouncements. *State v. Rhodes*, 2011-Ohio-5153, ¶ 11 (8th Dist.), citing *State v. Brooke*, 2007 Ohio 1533, ¶ 47. The housing court's journal entry contradicts itself, imposing community-control sanctions but also listing "N/A" for each count under the column labeled community control. Notably, where a journal entry complies with the substantive requirements of Crim.R. 32(C), it is still a final appealable order.[4] *Lester*, 2011-Ohio-5204, at ¶ 20. Here, the housing court's entry stated the fact of conviction and the sentence but contained contradictory information that community control was not imposed.

{¶ 58} There is a remedy to this error. A trial court may correct clerical errors in its sentencing entry that occur as a result of oversite or omission at any time. *State v. Spears*, 2010-Ohio-2229, ¶ 10 (8th Dist.), citing Crim.R. 36. Based

---

[4] Crim.R. 32(C) provides: A judgment of conviction shall set forth the fact of conviction and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk.

on the foregoing, we remand the case to the housing court for it to issue a nunc pro tunc entry correcting the sentencing entry.

{¶ 59} Judgment affirmed in part, modified in part, and vacated in part as follows. We affirm the housing court's imposition of community-control sanctions on a limited liability company, the requirement that Appellant address observed code violations on all properties, and the no-sale provision for the West 20th Street property. We decline to address Appellant's challenge to the imposition of sanctions pursuant to Cleveland Cod.Ord. Chapter 365 for the first time on appeal. We vacate the imposition of community-control sanctions on the Denison and Forestdale properties with respect to HC JE 4, 6, 7, 8, 9, and 23 and the requirement that Appellant close violation notices for uncited properties. Finally, we vacate the $50,000 fine and impose a fine of $5,000 held in abeyance based on the housing court's original order.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution. Cases remanded to the housing court for execution of sentence in accordance with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY